**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DEBORAH COOK,

        Plaintiff,

vs.

ELECTROLUX HOME PRODUCTS,
INC.,

        Defendant.

No. C04-3063-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY
JUDGMENT**

_____

**TABLE OF CONTENTS**

**I. INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . 10
       *1. Requirements of Rule 56* . . . . . . . . . . . . . . . . . . . 11
       *2. The parties' burdens* . . . . . . . . . . . . . . . . . . . . . 12
       *3. Summary judgment in employment discrimination cases* . . . . 12
   *B. Retaliation Claims Under The FMLA* . . . . . . . . . . . . . . . . . . . 15
   *C. Cook's FMLA Retaliation Claim* . . . . . . . . . . . . . . . . . . . . . 16
       *1. Serious Medical Condition* . . . . . . . . . . . . . . . . . . 16
       *2. Medical Certification* . . . . . . . . . . . . . . . . . . . . . 21
       *3. Legitimate Business Reason For Termination* . . . . . . . . . 24
       *4. Availability Of Second Medical Opinion* . . . . . . . . . . . . 25
       *5. Liquidated damages* . . . . . . . . . . . . . . . . . . . . . . 26

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On July 30, 2004, plaintiff Deborah Cook filed a complaint against her former employer, Electrolux Home Products, Inc. ("Electrolux"), alleging two causes of action: (1) unlawful discharge in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2061, *et seq.* ("FMLA"); and (2) a claim for unpaid wages, based on Electrolux's failure to pay her the backpay awarded by an arbitrator, under the Iowa Wage Payment Collection Law, Iowa Code ch. 91A, *et seq.* ("IWPCL").

Electrolux previously filed a Motion to Dismiss Count II, alleging that the backpay sought by Cook was not "wages" under the IWPCL, and alternatively that the IWPCL claim was preempted by the federal Labor-Management Relations Act, 29 U.S.C. § 185, *et seq.* Cook filed an uncontested Motion to Convert Defendant's Rule 12(b)(6) Motion to Dismiss to a Motion for Summary Judgment. Electrolux subsequently filed a Motion for Summary Judgment Based Upon *Res Judicata* in which it asserted that in light of this court's decision in *Electrolux Home Products, Inc. v. The United Automobile, Aerospace and Agricultural Implement Workers of America, et al.*, C04-3005-MWB, Memorandum Opinion and Order Regarding Cross-Motions For Summary Judgment ("November 17, 2004, Order"), *res judicata* barred Cook's claims in this case. Cook later filed a Motion for Summary Judgment in which she claimed entitlement to partial summary judgment on her FMLA claim due to the issue preclusive effect of this court's November 17, 2004, Order. The court concluded that its November 17, 2004, Order had no preclusive effect on this suit, and denied both Electrolux's Motion for Summary Judgment Based Upon *Res Judicata* and Cook's partial Motion for Summary Judgment based on collateral estoppel. However, the court granted Electrolux's partial motion for summary judgment as to Cook's IWPCL claim.

Electrolux has now filed its second Motion For Summary Judgment. In its motion, Electrolux contends that it is entitled to summary judgment on Cook's FMLA claim because Cook did not suffer from a serious health condition as that term is defined under the FMLA and, as a result, Electrolux asserts that Cook cannot establish a prima facie case of discrimination that is actionable under the FMLA. Electrolux further asserts that, as a matter of law, a one-day absence from work does not qualify as a "serious medical condition" under the FMLA. Electrolux also contends that Cook never tendered the requisite certification for the purpose of having her July 31, 2002, absence constitute a qualify FMLA event. Electrolux also seeks summary judgment on Cook's FMLA claim on the ground that Electrolux articulated legitimate, non-discriminatory reasons for Cook's firing which Cook cannot demonstrate to be a mere pretext for her termination. Electrolux further asserts that its actions were not "willful", undertaken in the absence of good faith, or undertaken without reasonable grounds for believing that it was not violating the FMLA in its actions. Electrolux also contends that some of Cook's claims and allegations are time-barred by the statute of limitations contained in the FMLA. Electrolux claims that the FMLA does not require employers to permit their employees to "doctor shop" and that, as a result, Cook cannot justify her absence under the FMLA. Finally, Electrolux claims that Cook's FMLA claim is duplicative of the relief already provided to her in a grievance/arbitration proceeding and therefore cannot be pursued. Cook has filed a timely response to Electrolux's Motion For Summary Judgment.

## B. Factual Background

The summary judgment record reveals that the following facts are undisputed. Plaintiff Deborah Cook was formerly employed by defendant Electrolux. During her work tenure at Electrolux, Cook was a unionized, hourly-compensated worker represented for

collective bargaining purposes by the United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 442 ("UAW 442"). A collective bargaining agreement maintained between Electrolux and UAW 442 defined the wages, hours, and terms and conditions of employment for hourly-compensated production and maintenance employees such as Cook. The collective bargaining agreement between Electrolux and UAW 442 stated:

> (a)     Attendance related disciplinary action shall be in line with the provisions of the plant's Attendance Policy.

Collective Bargaining Agreement at 28, Defendant's App. at 45.

On August 2, 2002, plaintiff Cook was discharged from her employment with defendant Electrolux. Prior to August 2, 2002, Cook had incurred an absentee event on July 31, 2002, when, after arriving for her scheduled work shift at 6:30 a.m., Cook departed work at 8:00 a.m. and did not return for the rest of her eight-hour work shift.

The attendance policy in force and effect at the time of Cook's firing allotted eight banked attendance points to each worker. Points were subtracted or added to a worker's attendance point bank total in accordance with the policy. Absences from work in excess of four hours per shift resulted in the subtraction of one full attendance point. The attendance policy also provided:

> Any absences of Sickness & Accident leave which do not qualify for FMLA (Family Medical Leave Act) and are less than 10 working days = 1 point.

Attendance Policy, Defendant's App. at 101. Employees who exhausted their allotment of eight baked attendance points were subject to termination of employment. The attendance policy has been in force and effect at Electrolux since November 1, 1995.

Before Cook's absence infraction on July 13, 2002, Cook reviewed her personal

4

attendance point totals which are maintained in computer format by Electrolux. Electrolux's absentee point total records reviewed by Cook on July 18, 2002, reflected that as of that date, Cook had just one point remaining in her accumulated absentee bank. Before the absentee infraction on July 31, 2002, the next most recent absentee point infraction incurred by Cook occurred on July 2, 2002, when Cook's accumulated attendance bank was decreased by .5 points as a result of a tardy infraction that occurred on that same date.

Cook appeared and worked her entire shift on August 1, 2002. On that same date, following completion of her full work shift at Electrolux, Cook met with a health care provider she personally had chose and selected, Physician Assistant Dawn Syferd-Peterson ("P.A. Syferd-Peterson") for the purpose of undergoing an examination for the medical ailment which caused Cook to be absent from work on July 31, 2002. During this visit, Cook requested that P.A. Syferd-Peterson issue a FMLA certification for her July 1, 2002, leave. The request for FMLA certification was made by Cook because she wanted her July 31, 2002, absence to be treated as a FMLA-protected event and treated as a future FMLA chronic condition. P.A. Syferd-Peterson, however, refused Cook's request to FMLA-certify Cook's July 31, 2002, absence from work. Cook knew and understood that in the event she was unable to medically certify her July 31, 2002, absence as a FMLA-qualifying event, Cook was going to be charged one point against her accumulated attendance bank at Electrolux.

Prior to Cook's July 31, 2002, absence from work, no health care provider had certified or represented to Electrolux that Cook's July 31, 2002, medical ailment known as "gastritis" or gastroesophageal reflux disease "GERD" was a "Serious," "Chronic" or

intermittent leave-required condition under the FMLA.[1]

On August 2, 2002, Electrolux asked Cook to submit FMLA certification for her absence on July 31, 2002. Cook asked Electrolux Human Resources Administrator Melissa Bernard to directly contact P.A. Syferd-Peterson to inquire as to whether Cook's July 31, 2002, absence could be certified as a FMLA event. Bernard directly contacted the medical office of P.A. Syferd-Peterson and the medical office refused to certify Cook's July 31, 2002, absence as a FMLA-qualifying event. Because Cook's July 31, 2002, absence appeared to be a non-qualifying FMLA event, under Electrolux's attendance policy, the one remaining point in Cook's accumulated attendance bank was subtracted out and her termination was called for under Electrolux's attendance policy.[2]

---

[1] The court notes that the parties have treated gastritis and GERD as being the same medical condition.

[2] Although Cook contests the facts contained in this paragraph, she has not referred the court to those portions of the summary judgment record which would support her position. Local Rule 56.1 provides in pertinent part that:

> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.

LOCAL RULE 56.1(b)(4). Because Cook has failed in her response to Electrolux's statement of facts to cite to portions of the summary judgment record which support her

(continued...)

On August 2, 2002, Cook was notified of her termination. On this same date, Cook's collective bargaining representative, UAW Local 442, instructed Cook to comprehensively review the attendance records maintained by Electrolux with respect to her and to look for any mistakes or errors in designating point infractions. Cook reviewed her Electrolux attendance records and the only company-assigned point infraction she contested or disputed was that of July 31, 2002. In subsequent collective bargaining grievance/arbitration procedures conducted following Cook's firing, the only absentee point infraction charged to Cook's accumulated attendance bank which Cook challenged or disputed, was her absence on July 31, 2002.

Following her August 2, 2002, termination, Cook contacted the medical offices of Dr. Norman Nguyen to inquire whether Dr. Nguyen would review the FMLA-disqualifying opinion previously rendered by P.A. Syferd-Peterson. The medical offices of Dr. Nguyen told Cook that because Dr. Nguyen had not seen or otherwise examined Cook, it would not override or second-guess the medical opinion of P.A. Syferd-Peterson.

Cook then visited the medical offices of Nurse Practitioner Rochelle Guess ("N.P. Guess"). On August 5, 2002, N.P. Guess issued Cook a medical note which stated in its entirety:

> Reports missed day of work 7/31/02 due to stomach pain seen
> in office today with epigastric pain

Defendant's App. at 76. N.P. Guess also filled out an United States Department of Labor FMLA form, Form WH-380. Part 4 of the WH-380 form asks the following question:

> 4.    Page 4 describes what is meant by a "serious medical
>        condition" under the Family and Medical Leave Act.

---

[2](…continued)
position, the facts in this paragraph are deemed admitted.

> Does the patient's condition qualify under any of the
> categories described? If so, please check the applicable
> category.

Defendant's App. at 80. N.P. Guess answered this question by checking condition #4 on the form. Defendant's App. at 80. Condition #4 on the form is reserved for "Chronic Conditions Requiring Treatments" and is defined as follows:

> A chronic condition which:
> (1)     Requires periodic visits for treatment by a health
>         care provider, or by a nurse or physician's
>         assistant under direct supervision of a health care
>         provider;
> (2)     Continues over an extended period of time
>         (including recurring episodes of a single
>         underlying condition); and
> (3)     May cause episodic rather than a continuing
>         period of incapacity (e.g., asthma, diabetes,
>         epilepsy, etc.).

Defendant's App. at 83 (footnotes omitted).

N.P. Guess, however, did not answer that portion of the WH-380 form which asked: "If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity." Defendant's App. at 80.

Cook submitted both the WH-380 form filled out by N.P. Guess and the note N.P Guess wrote to her UAW Local 442 representative in an effort to have her July 31, 2002, absence recognized as a FMLA-qualifying event. Electrolux, however, continued to refuse to recognize Cook's July 31, 2002, absence as a FMLA-qualifying event.

Cook later submitted another note from N.P. Guess to Electrolux.[3] This note read as follows:

> Deb's absence on 7/31/02 was related to her GERD. GERD is the diagnosis related to Deb's FMLA. This was also the reason Deb's visit on 8/6/02.

Defendant's App. at 78. Neither P.A. Syferd-Peterson, Dr. Nguyen, nor N.P. Guess were designated or approved by Electrolux for the purposes of opining whether Cook's July 31, 2002, absence was a FMLA-qualifying event.

Shortly after Cook's termination, and while Cook's union grievance on her part was making its way through the grievance/arbitration procedure of the collective bargaining agreement, Electrolux sought out legal counsel over its decision. Electrolux was informed that legal counsel was of the opinion that doctor shopping was not a permitted practice under the FMLA.

Following her termination, Cook pursued a grievance/arbitration under the Electrolux-UAW Local 442 collective bargaining agreement. As a result of those arbitration proceedings, Cook was reinstated to her position of employment with Electrolux and was reinstated with 1.0 points remaining in her attendance bank. After Cook returned to work at Electrolux, she was again terminated on May 7, 2004, for exhausting the allotment of points left in her accumulated attendance bank. Cook did not grieve or seek arbitration for her May 7, 2004, termination. Cook does not challenge, in the complaint filed in this matter, her May 7, 2004, termination.

During her period of employment with Electrolux, Cook utilized and invoked the FMLA to justify a number of absences or tardiness from employment. Electrolux

---

[3]When this note was given to Electrolux is disputed by the parties.

recognized the following occasions as FMLA-protected events: June 17-20, 2002; June 3, 2002; May 31, 2002; May 22-23, 2002; May 2-3,2002; April 23, 2002; April 22, 2002; April 17-19, 2002; March 27, 2002' March 11, 2002; February 25-27, 2002; January 7-8, 2002; January 3-4, 2002; December 10-11, 2001; December 7, 2001. Because these absences were recognized by Electrolux as FMLA-qualifying events, Cook did not incur attendance point subtractions from her accumulated attendance bank on each of these occasions. Cook submitted Sickness and Accident Request forms to Electrolux for these absences.

During her employment with Electrolux, Cook also incurred FMLA chronic and intermittent leaves as a result of a migraine-related health condition. Cook does not claim to have suffered or experienced any form of discrimination or retaliation as a result of these chronic and intermittent leaves.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F. Supp. 1224, 1230-31 (N.D. Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F. Supp. 1303, 1305-07 (N.D. Iowa 1997); *Laird v. Stilwill*, 969 F. Supp. 1167, 1172-74 (N.D. Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F. Supp. 1483, 1499-1501 (N.D. Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 817-18 (N.D. Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F. Supp. 1237, 1239-40 (N.D. Iowa 1997); *Lockhart v. Cedar Rapids*

*Community Sch. Dist.*, 963 F. Supp. 805 (N.D. Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1.    *Requirements of Rule 56*

Rule 56 itself provides, in pertinent part, as follows:

> Rule 56.  Summary Judgment
>
> (b) For Defending Party.  A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.
> (c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added).  Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial.  *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990).  An issue of material fact is genuine if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995); *Hartnagel,* 953 F.2d at 394.

### 2.     *The parties' burdens*

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377 (same).

### 3.     *Summary judgment in employment discrimination cases*

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be

used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991); *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir. 1987), *cert. denied*, 488 U.S. 1004 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir. 1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir. 1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post-Dispatch*, 51 F.3d 147, 148 (8th Cir. 1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir. 1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir. 1995) (quoting *Crawford*,

37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir. 1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818 (1999). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 142 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).[4] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is "'1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case,

_____

[4]In *Reeves*, the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). With these standards in mind, the court turns to consideration of defendant Electrolux's Motion For Summary Judgment.

## B. Retaliation Claims Under The FMLA

The Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, "entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)); *Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 943 (8th Cir.), *cert. denied*, 539 U.S. 942 (2003); *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). Furthermore, "[w]hen an employee completes her FMLA leave, she is generally entitled to be restored to the position she occupied before she took leave." *Id.* (citing 29 U.S.C. § 2614(a)(1)); *Darby*, 287 F.3d at 679 ("'[U]pon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits . . . .'") (quoting *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002)). Also, the FMLA "prohibits employers from discriminating against employees for exercising their rights under the Act." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002) (citing 29 U.S.C. §§ 2612, 2615(a)(2) (2000)). Thus, the Eighth Circuit Court of Appeals has recognized that "[r]etaliation through an adverse employment action based on an employee's exercise of FMLA rights is actionable." *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005); *Smith*, 302 F.3d at 832; *Darby*, 287 F.3d at 679.

"An employee can prove FMLA retaliation circumstantially, using a variant of the burden shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Id.*; *Smith*, 302 F.3d at 832. More specifically, "[t]o establish a prima facie case of retaliation, [the plaintiff] must show [1] that he exercised rights afforded by the Act, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between his exercise of rights and the adverse employment action." *Id.*; *Smith*, 302 F.3d at 832; *Darby*, 287 F.3d at 679. But, as the Eighth Circuit Court of Appeals has explained, "the *McDonnell Douglas* battle is only begun with the prima facie case. If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual." *Smith*, 302 F.3d at 833.

### C. Cook's FMLA Retaliation Claim

Electrolux's motion for summary judgment centers on the first step in the *McDonnell Douglas* burden-shifting analysis of Cook's FMLA retaliation claim. Therefore, the court turns to consider that stage of the analysis.

#### 1. Serious Medical Condition

The parties dispute whether Cook can make an adequate showing on the first element of her *prima facie* case. Electrolux initially asserts that Cook did not suffer from a serious medical condition within the meaning of the FMLA and therefore she is not entitled to take leave under the FMLA.

Congress enacted the FMLA "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Thus, employees

who qualify for leave under the FMLA are entitled to take leave under those four situations specified in the FMLA. Cook relies on only one: "Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Thus, the court must first address the issue of whether Cook's GERD constitutes a "serious health condition" within the meaning of the FMLA.

The FMLA defines "serious health condition" as follows:

> The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves--
> (A) inpatient care in a hospital, hospice, or residential medical care facility; or
> (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). There is no suggestion that Cook ever received inpatient care for her GERD, so her condition plainly fails to satisfy the requirements of 29 U.S.C. § 2611(11)(A). Thus, whether her GERD qualifies as a "serious health condition" turns on whether it constitutes "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The United States Department of Labor's regulations provide a more detailed explanation of what qualifies as a "serious health condition" involving continuing treatment under the FMLA:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> . . . .
> (2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular activities due to a serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition,  that also involves:

(A) Treatment two or more times by a health care provider . . . or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider . . .;

(B) Continues over an extended period of time . . .; and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)

. . . .

(b) Treatment for the purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition.  Treatment does not include routine physical examinations. . .  Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen).  A regimen of continuing treatment that includes … activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

. . . .

(e) Absences attributable to incapacity under paragraphs

(a)(2)(ii) or (iii) qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level.

29 C.F.R. § 825.114.

Therefore, in order to show that she was entitled to FMLA protection under this provision, Cook must come forward with evidence that tends to demonstrate a period of incapacity of at least three consecutive days and related treatment two or more times by a health care provider. Electrolux argues that Cook's absence on July 31, 2002, does not meet the FMLA's requirements for a serious health condition because her GERD caused her to only miss one day of work. Cook, on the other hand, contends that her GERD does satisfy the definition of serious health condition found in § 825.114(a)(2)(i) because her condition caused her to take intermittent leave and see a health care provider for treatment.

The record in this case shows that Cook took medical leave for "gastrointeritis" on July 17, 2001 through July 19, 2001. She was seen by a health care provider on July 17, 2001. Cook subsequently took medical leave for "gastritis" from April 17, 2002, through April 24, 2002. She was seen by a medical care provider on April 20, 2002. Cook again took medical leave from June 18, 2002, through June 21, 2002. On this occasion, Cook's medical condition was listed on Electrolux's sickness form as abdominal pain and diarrhea. Cook was seen by a medical care provider on June 19, 2002. Given this record, which the court must view in the light most favorable to Cook and give her the benefit of all reasonable inferences that can be drawn from these facts, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377, the court concludes that Cook has generated a

genuine issue of material fact on the question of whether she suffered from a serious medical condition. Therefore, this portion of Electrolux's motion for summary judgment is denied.[5]

---

[5]Electrolux directs the court's attention to the decision in *Levine v. The Children's Museum of Indianapolis, Inc.*, 2002 WL 1800254 (S.D. Ind. July 1, 2002), *aff'd*, 61 Fed. Appx. (7th Cir. Mar. 23, 2003). This case is clearly distinguishable from the *Levine* decision. In *Levine*, the plaintiff left work and did not seek any medical care for his GERD. *Id.* at *2. In resisting defendant's motion for summary judgment, the plaintiff submitted an affidavit in which he stated that he was "incapacitated". *Id.* In granting the defendant's motion for summary judgment, the court found:

> Levine cannot show that he suffered from a serious health condition under § 825.114(a)(2)(i) or (iii) because he has not produced competent evidence that he was incapacitated by GERD at any time during the period November 26--29, 1999. . . . In support of his claim of incapacity, Levine relies only on his own affidavit and the affidavit of his wife, Myra Levine. Both affidavits assert that Levine was "incapacitated" on November 26--29, that he did not perform any of the "normal daily activities" that he normally would perform, and that he remained in bed. These allegations are too general and conclusory to create a genuine issue of material fact for trial. A plaintiff's own statement is insufficient to establish incapacity under the FMLA. . . . Without evidence of incapacity, Levine's FMLA claim fails as a matter of law because he cannot make a prima facie showing that he suffered from a "serious health condition" under the FMLA.

*Levine*, 2002 WL 1800254, at *6-7. Here, in contrast, Cook was seen by health care providers on a number of occasions and these health care providers indicated on Electrolux's Sickness and Accident Form that Cook was suffering from a "disability" at the time in question.

## 2.    *Medical Certification*

Electrolux next contends that Cook did not meet her FMLA certification obligations and therefore she cannot establish a prima facie discrimination claim under the FMLA. Cook contests this issue.

Employers, under the FMLA, "may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a).  Federal courts have deemed a certification to be sufficient

> if it states the date on which the serious health condition commenced, the probable duration of the condition, the appropriate medical facts within the knowledge of the health care provider regarding the condition, and a statement that the employee is unable to perform the functions of the position of the employee.

*Parris v. Miami Herald Pub. Co.*, 216 F.3d 1298, 1302 n. 2 (11th Cir. 2000) (citing 29 U.S.C. § 2613(a)-(b)).

The FMLA further requires that an "employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a).  The Department of Labor's regulations implementing the FMLA specifically state that when providing medical certification before the leave period begins proves impossible, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts." 29 C.F.R. § 825.305(b).  However, while an employer may require certification from the employee's physician, the employer must give "the employee at least 15 calendar days in which to submit it." *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 777 (7th Cir. 2000) (citing 29 C.F.R. § 825.305).  An employer may also provide for a more

generous deadline or dispense with the certification requirement in its entirety. *Rager*, 210 F.3d at 777. Moreover, "[a]t the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d). The Department of Labor's regulations further require that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any deficiency." 29 C.F.R. § 825.305(d).

Electrolux asserts that the medical documents Cook submitted were insufficient as a matter of law given the FMLA's requirement that the medical condition render the employee unable to work. The court notes that the FMLA does not require an employee to submit a medical certification in order to be eligible for FMLA leave. Instead, the FMLA gives to an employer the option to request an employee to submit certification. *See* 29 U.S.C. § 2613(a).[6] While Electrolux chose this option here, a material fact question has been generated as to whether Electrolux failed to follow through with the regulations regarding such requests for certification. Specifically, whether Electrolux failed to comply with the regulation that it was required to give Cook fifteen days in which to submit the

---

[6]Section 2613(a) provides:

> An employer may require that a request for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title be supported by a certification issued by the health care provider of the eligible employee or of the son, daughter, spouse, or parent of the employee, as appropriate. The employee shall provide, in a timely manner, a copy of such certification to the employer.

29 U.S.C. § 2613(a).

requested medical certification, *see* 29 C.F.R. § 825.305(b), and whether Electrolux did not give Cook notice of what it viewed as the deficiencies in the medical certification form submitted by Cook, which is required under the Department of Labor's regulations.[7] *See* 29 C.F.R. § 825.305(d). In addition, the court finds that a genuine issue of material fact has been generated on the question of whether Electrolux gave Cook an opportunity to cure any alleged deficiencies in the medical certification form, again as required under the

---

[7]The court notes that Electrolux asserts that it was not required to wait the full fifteen days for Cook to provide medical certification before taking action and cites the Fifth Circuit Court of Appeals's decision in *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 332 (5th Cir. 1998), *cert. denied*, 526 U.S. 1051 (1999). The *Boyd* decision, however, is not controlling precedent because the employee in that case was given clear notice of the FMLA certification requirement and in response provided his employer with three "doctors' notes" but "none of which diagnosed his absence as medically required." *Id.* The employer, in turn, informed the employee that each of the three notes was insufficient. *Id.* at 328. The employer then sent the employee a written request for medical certification which also informed the employee that he would be subject to termination "unless he provided immediate documentation of a medical need for his absence." *Id.* Five days later, the employee responded with another note, "which again failed to indicate that leave of absence was medically required." *Id.* It was under this factual setting that the Fifth Circuit Court of Appeals held:

> as a matter of law, that when an employee submits medical information in response to an employer's written request, 29 C.F.R. 825.305(b) is no longer implicated and the employer is not required to wait fifteen days before taking action on the employee's request for medical leave.

*Id.* at 332. Here, the record shows that Cook was fired on August 2, 2002, the very day she returned to work and her first day since missing part of her work shift on July 31, 2002. Moreover, at the time of her discharge, Cook had not provided any written medical certification to Electrolux. Thus, the facts of the present case are contrary to those found in the *Boyd* decision.

Department of Labor's regulations. *See* 29 C.F.R. § 825.305(d). Therefore, this portion of Electrolux's Motion For Summary Judgment is denied.

### 3. *Legitimate Business Reason For Termination*

Electrolux next contends that even if Cook can establish a prima facie case, it has come forward with evidence of a legitimate, nondiscriminatory reason for its treatment of Cook, that Cook had zero attendance points and was therefore in violation of the attendance policy. Electrolux asserts because it has come forward with a legitimate, nondiscriminatory reason for firing Cook, Cook "must then point to some evidence that the employer's proffered reason is pretextual." *Smith*, 302 F.3d at 833; *see Kiel*, 169 F.3d at 1135. Thus, to carry the burden of showing pretext, Cook is obligated to present evidence that Electrolux's justification for her firing was unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

It is clear that temporal proximity of the FMLA leave and the adverse employment action cannot, standing alone, sustain Cook's burden. *See Groves v. Cost Planning and Management Int'l., Inc.*, 372 F.3d 1008, 1010 (8th Cir. 2004) ("timing alone does not sufficiently undermine [the employer's] justifications to create a genuine issue of fact on pretext"); *Smith*, 302 F.3d at 834 (finding that "the sole fact that [the plaintiff] was fired at about the same time she took family leave cannot support an inference of pretext."); *Sprenger*, 253 F.3d at 1114 (8th Cir. 2001) ("we have been hesitant to find pretext or discrimination on temporal proximity alone, and look for proximity in conjunction with other evidence.") (citations omitted). However, temporal proximity in conjunction with other circumstantial evidence supporting an inference of pretext can satisfy the plaintiff's burden on summary judgment. *See Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1020-21 (8th Cir. 2005) (finding plaintiff had satisfied her burden regarding pretext from combination of close temporal proximity, strong employment history, and where plaintiff

24

was objectively qualified for newly created position but was told she was a non-viable candidate).

The court concludes that the circumstances surrounding Electrolux's firing of Cook coupled with the fact that she was fired at about the same time she attempted to take leave under the FMLA support an inference of pretext. Although Electrolux asserts that Cook was fired because she had reached zero attendance points, this conclusion was only reached after Cook attempted to seek FMLA leave for her absence on July 31, 2002. Moreover, it cannot be overlooked that Cook was terminated on her first scheduled day of work following that absence and without permitting her an opportunity to provide Electrolux with any written medical certification.

The court finds that the temporal proximity of Cook's request for FMLA leave and the adverse employment action, in conjunction with the circumstances surrounding Electrolux's firing of Cook, generates a genuine issue of material fact that the reasons articulated by Electrolux for Cook's termination are pretextual. As Cook has met her burden in establishing a genuine issue of material fact as to pretext, this portion of Electrolux's Motion For Summary Judgment is also denied.

### 4. *Availability Of Second Medical Opinion*

Electrolux further contends that, under the FMLA, only the employer may obtain a second medical opinion from a health care provider designated by the employer. Electrolux's argument on this point is grounded on the text of 29 U.S.C. § 2613(c)(1), which provides:

> In any case in which the employer has reason to doubt the validity of the certification provided under subsection (a) of this section for leave under subparagraph (C) or (D) of section 2612(a)(1) of this title, the employer may require, at the expense of the employer, that the eligible employee obtain the

> opinion of a second health care provider designated or
> approved by the employer concerning any information certified
> under subsection (b) of this section for such leave.

29 U.S.C. § 2613(c)(1). Section § 2613(c)(1) clearly gives an employer the right to seek a second medical opinion. However, it contains no limitation or restriction on an employee obtaining a second medical opinion. Moreover, the court notes that Electrolux has not directed the court to any federal court decision placing a limit on employees obtaining a second health care provider opinion. In contrast to Electrolux's assertion, the Seventh Circuit Court of Appeals observed that:

> The FMLA circumscribes the employer's right to challenge a
> physician's certification that leave is FMLA-qualifying, see 29
> U.S.C. § 2613, but nothing in the Act or regulations limits the
> employee's ability to produce a medical opinion that
> contradicts a prior negative certification originally provided by
> the employee.

*Stoops v. One Call Communications, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998). The clear inference to be drawn from this statement is that an employee can obtain a second opinion from a medical care provider. Given the complete absence of federal authority precluding an employee from obtaining a second medical opinion, the court concludes that the FMLA only requires that an employee obtain a certification issued by the health care provider within the fifteen days specified in 29 C.F.R. § 825.305(b), and an employee is not precluded from obtaining a second opinion from a health care provider. Therefore, this portion of Electrolux's Motion For Summary Judgment is also denied.

### 5. *Liquidated damages*

Electrolux next contends that there are not genuine issues of material fact that Electrolux's actions were not "willful" and that because Cook has already prevailed in her

union's arbitration action against Electrolux based on the collective bargain agreement, it is entitled to judgment as a matter of law on Cook's claim for liquidated damages. Cook counters that willfulness is not the correct standard for the awarding of liquidated damages under the FMLA and that she has raised a genuine issue of material fact regarding Electrolux's actions in her termination so as to preclude the granting of summary judgment on her claim for liquidated damages.

Under the FMLA, the defendant employer "shall be liable to any eligible employee affected [by a violation of the FMLA] . . . [for] an additional amount as liquidated damages equal to the sum of the amount" of other damages and interest awarded pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii). 29 U.S.C. § 2617(a)(1)(A)(iii). An exception exists for "this otherwise mandatory call for liquidated damages." *Thorson v. Gemini*, Inc., 205 F.3d 370, 383 (8th Cir. 2000). That is, if Electrolux can establish "to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively." 29 U.S.C. § 2617(a)(1)(A)(iii); *see Thorson*, 205 F.3d at 383 (if good faith is shown, then "court in its discretion may decline the award of liquidated damages").

Electrolux contends that the summary judgment record demonstrates that it did not willfully violate the FMLA when terminating Cook's employment. Electrolux points to the fact that it sought out the advice of counsel regarding Cook's termination as supporting its argument that its actions were not in willful violation of the FMLA. The court, however, notes that the record shows that Electrolux did not seek the advice of legal counsel before Cook's firing on August, 2, 2002, but a short time later, when Cook

submitted materials from N.P. Guess. Therefore, the fact that Electrolux ultimately sought the advice of counsel sheds no light on the propriety of its actions on the date Cook was fired. The court notes that the temporal proximity of Cook's request for FMLA leave and the adverse employment action, in conjunction with the circumstances surrounding Electrolux's firing of Cook, raises a genuine issue of material fact that Electrolux's action in firing Cook was not taken in good faith. Thus, the court concludes that Electrolux has not established, on the summary judgment record here, that as a matter of law its action in this case was taken in good faith. Therefore, this portion of Electrolux's Motion For Summary Judgment is also denied.

### III.  CONCLUSION

For the foregoing reasons,  Electrolux's Motion For Summary Judgment is denied.
**IT IS SO ORDERED.**

**DATED** this 28th day of November, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA